Receipt #

ORIGINAL

ECF

FILED
JUL 1 1 2003
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CEPOLK LIMITED PARTNERSHIP, )
)
Plaintiff )
)
vs. ) No. 03-1684C
)
THE UNITED STATES OF AMERICA, )
)
Defendant )
)

COMPLAINT

Plaintiff, CEPOLK Limited Partnership, as and for its complaint against the Defendant the United States, alleges as follows:

1. Plaintiff, CEPOLK Limited Partnership, is a Limited Partnership organized in the State of California. Cepolk Corporation is the General Partner and Thermalcline, Inc. is the limited partner.

2. This action is commenced as an appeal from a Contracting Officer's final decision issued on July 18, 2002, denying CEPOLK Limited Partnership's claims for adjustment to the utility rates and recovery of prior underpayments.

3. This Court has jurisdiction over this matter under 41 U.S.C. § 609(a).

## FACTUAL BACKGROUND

4. Contract No. DACA87-94-C-0008 (the Contract) was awarded by the Department of the Army, United States Army Engineers, Huntsville, Alabama to Co-Energy Group on January 31, 1994.

5. On April 28, 1995, Co-Energy Group executed a novation of the Contract to CEPOLK Limited Partnership. The novation was signed by Co-Energy Group, CEPOLK Limited Partnership, and the government. The novation transferred all rights and obligations of Co-Energy Group to CEPOLK Limited Partnership. The novation executed by the government established privity of contract between the government and CEPOLK Limited Partnership. Because CEPOLK Limited Partnership is the successor to Co-Energy Group, all references to acts by either Co-Energy Group or CEPOLK Limited Partnership in this complaint will be alleged or referred to as acts by "Plaintiff."

6. Solicitation No. DACA87-93-R-0036 (the Solicitation) that became the Contract was issued on April 2, 1993. It was a negotiated acquisition and proposals were due by June 11, 1993. The date for receipt of proposals was later extended to December 30, 1993.

7. The Solicitation was issued by the United States Army Corps of Engineers, Huntsville, Alabama Division. All pre-award negotiations were conducted by the Huntsville Division of the Corps of Engineers.

8. The Solicitation stated in Section C, paragraph 1, that the purpose of the resulting contract was to "engage a contractor who will provide equipment and services

at Fort Polk, Louisiana, family housing complex, that will modify or replace the heating, ventilation, and air conditioning (HVAC) system to reduce energy consumption and cost." The Fort Polk family housing complex contained 4003 family housing units.

9. The Solicitation desired replacement of existing HVAC units with closed loop ground coupled heat pumps due to their energy efficiency and low maintenance requirements.

10. The services and equipment offered to reduce energy consumption were to be provided at the contractor's expense. In consideration of the contractor providing services and equipment at its own expense, the contractor receives a percentage of the avoided energy and maintenance expenditures over the term of the contract. The Contract term was 20 years. This is known as a Shared Energy Savings Contract.

11. The amount of energy used at Fort Polk is measured in KWH, Kilo Watt Hours, for electricity and KCF, Kilo Cubic Feet, for natural gas.

12. The amount of energy savings is based upon a monthly comparison between a contractual baseline (the Baseline) and metered energy use for each month. The purpose of the Baseline is to establish what energy use would be in a particular month if there was not an energy savings contract. The difference between the Baseline amount and the metered amount of energy use is the amount of energy savings.

13. The Baseline in the Solicitation was based upon historical energy use from August 31, 1988 through February 1993. This historical information was contained in Section J, Attachment 2 of the Solicitation.

14. Plaintiff was awarded a similar energy savings contract for family housing units at an Army facility in Hawaii, Aliamanu Military Reservation (AMR), prior to responding to the Solicitation for this contract.

15. Based on its experience with the AMR contract, Plaintiff proposed to use a formula as the Baseline in the Contract that would adjust the Baseline each month to include variable factors that affect energy consumption.

16. Prior to Plaintiff submitting its technical and pricing proposals, in approximately April 1993, Plaintiff and the government agreed to change the Baseline in the Contract to a formula that considered the effect of the variable factor of weather on energy consumption. This baseline formula considered the number of heating degree days and cooling degree days in a monthly billing period.

17. This new baseline formula was included in the Contract at Section C, Paragraph 14.0.

18. In June 1993, Plaintiff submitted a technical proposal containing 12 energy conservation proposals (ECPs) for the family housing complex at Fort Polk in response to the Solicitation. The major energy conservation proposal was to retrofit each of the 4003 family housing units with a new closed loop, ground coupled, geothermal heat pump to provide space cooling and heating, and water heating.

19. Plaintiff submitted a second proposal on or about December 29, 1993.

20. The estimated costs for constructing and implementing the twelve energy conservation proposals was $17,939,926. This estimate was incorporated into the

Contract in Schedule B-2. The eventual cost of implementing Plaintiff's proposal was approximately $21,500,000.

21. The Solicitation provided that the contractor would take over maintenance of the existing HVAC systems and share in the government's maintenance savings beginning the fourth month after award of the contract. Valuation and payment of maintenance savings was based upon the government's historical cost of maintaining and replacing the HVAC equipment in the family housing complex at Fort Polk, increased yearly by the Consumer Price Index for the area. Payment for maintenance savings is not part of this action.

22. The Solicitation provided in Schedule C, Paragraph 7.5 that the contractor "shall complete all construction activities and provide functional operating systems for each of the energy conservation proposals within 36 months of the start of construction." The Plaintiff completed construction of all ECPs before this deadline.

23. No payments for energy savings could be claimed until after the contractor installed an ECP or a discrete portion thereof and it was approved by the government. The Contract, Section C, Paragraph 13.2.

24. Plaintiff had to consider four elements relating to energy savings in developing a contract price that was economically practicable. These four elements are: (1) the costs to implement the ECPs, including the cost of borrowing to finance these costs; (2) the amount of energy savings, KWH for electricity or KCF for natural gas, that could reasonably be expected during the term of the contract; (3) the value of the energy savings, based upon rate per KWH or rate per KCF; and (4) what percentage of the

energy savings value (money savings) would go to Plaintiff. This last element is required of the Contract. The contractor has to state what percentage of each month's value of energy savings (money savings) will go to the contractor.

25. The pricing methodology for energy savings mandated by the Contract as set forth in Paragraph 24, above, set the future terms of payment for a twenty year period. That period was further broken down into monthly payment periods, for a total of 240 future monthly payments.

26. Each monthly payment to the contractor for energy savings is based upon a formula. First, the amount of energy savings is determined by the difference between the Baseline and metered energy savings measured in KWH or KCF. Second, the KWH and KCF savings are multiplied by the applicable rate to determine the value of the energy savings (money savings). Third, the value of the energy savings is multiplied by the percent that is payable to the contractor to determine the amount of that month's payment to the contractor. For example, if the value of the energy savings was $100,000 and the contractor's share is 85 percent, the contractor's payment is $85,000.

27. The Solicitation contained a present value formula to determine the net savings to the government over the term of the contract and whether the contractor's price was reasonable. The formula used an inflation in the cost of utilities of 4 percent per year and a discount rate of 8.4 percent. This formula is in Section M of the Solicitation.

28. During the twenty years prior to the issuance of the Solicitation, utility rates had increased annually.

29. During all negotiations between Plaintiff and the government on price, both parties used the contractually mandated utility rate inflation factor of 4 percent per year as a basic fact influencing contract price.

30. Applying the 4 percent utility rate inflation to energy savings results in the contractor receiving a greater payment each year for the same energy savings.

31. To offset the 4 percent increase in energy rates, and therefore the Contract payments to Plaintiff, the parties agreed upon a monthly payment schedule in which Plaintiff received an increasingly smaller percentage of the value of the monthly energy savings value as performance of the Contract progressed. The agreement on the monthly sharing percentages for the twenty year term is included in the Contract in Schedule B-1A. This payment schedule included a 5 percent reduction in sharing percentage for Plaintiff every three to four years. The range in sharing percent payable to Plaintiff is a high of 90 percent near the beginning of the Contract term and is reduced to 65 percent by the final three years of the Contract.

32. The reduction in sharing percentage to Plaintiff over the term of the contract, combined with the 4 percent inflation of the utility rates, results in Plaintiff being paid the same amount each year if the energy savings remain the same.

33. During price negotiations the parties agreed to use the rate per KWH or KCF applicable on the date of award of the Contract, inflated it by 4 percent over the term of the contract, in all discussions, economic analysis, and negotiations.

34. The Contract was awarded on January 31, 1994. Section M of the Solicitation was specifically incorporated into the Contract by the government.

35. After award of the Contract, administration of the Contract was transferred from the United States Army Corps of Engineers to the Directorate of Contracting at Fort Polk.

36. After transfer of administration of the Contract to Fort Polk, Co-Energy Group novated the Contract to CEPOLK Limited Partnership. The novation agreement was signed by Co-Energy Group, the government, and CEPOLK Limited Partnership.

37. Every month during the Contract performance the government provided Plaintiff with the rates to be used in calculating Contract payments for the amount of KWH and KCF energy savings.

38. Beginning in 1994 and continuing until approximately May 2001, the government-provided energy rates for KWH and KCF used for calculating payments to Plaintiff for energy savings that remained constant.

39. On or about June 17, 1999, Plaintiff submitted a claim to the contracting officer. A portion of the claim was based upon the fact that there had been no inflation of the government-provided energy rates and requested reformation of the Contract to apply a 4 percent inflation factor to the energy rates as the parties intended. The claim was properly certified in accordance with the Contract Disputes Act on or about July 15, 1999.

40. By Contract Modification P00109, dated September 22, 2000, the government provided a principal payment of $990,912.85 based a negotiated agreement of a portion of Plaintiff's claim for certain changes to heat pumps, ceiling fan installation, and temperature setting changes.

41. Although Plaintiff and the government were able to settle several parts of the claim, they were not able to resolve the request for reformation.

42. On July 24, 2001, the contracting officer issued a decision denying the claims request for reformation. On July 22, 2002, Plaintiff filed an action in this Court (No. 02-864C) to appeal the contracting officer's decision.

43. During the course of the Contract administration, the government had provided Plaintiff several years of historical data and natural gas use and energy rates for the housing units covered by the contract. These rates were referred to as the "Utility Billing Family Housing 'A' Rates" (the "A" rates).

44. The government uses the A rates to calculate reimbursement to the Army's Directorate of Public Works (DPW) for its utility use. These rates are higher than the local utility rates because they include a burden on the local utility rate to cover DPW's distribution cost of the utilities to the housing areas. The historical data indicates that DPW's markup on the local utility rates is approximately 17 percent.

45. Plaintiff submitted invoices for the shared energy savings based on A Rate sheets that the government provided to Plaintiff. This was consistent with the terms of the Contract and the written explanation of the calculation of payments due to the contractor for monthly energy savings using the A rate.

46. Beginning in June 2001, the government notified Plaintiff that the payment calculation should be based on local utility billing data, not the government's A rate.

47. Plaintiff complied with the government's new requirement. However, Plaintiff made a series of submissions to the government pointing out multiple government errors in the application of both the A rate and the utility billing rates, as well as the meter readings provided by the government as the basis for Plaintiff's shared energy savings payments. The net result of these problems was a significant underpayment by the government of the amount due to Plaintiff for its portion of the shared energy savings.

48. On or about December 12, 2001, Plaintiff submitted a claim to the contracting officer. The claim was properly certified. Plaintiff sought an adjustment to the utility rates, recovery of prior underpayments, and the unpaid interest on the Contract Modification P00109.

49. On July 18, 2002, the contracting officer issued a decision denying the claims for adjustment to the utility rates and recovery of prior underpayments. A copy of the decision is attached to this complaint.

50. In the contracting officer's decision, the government stated that interest might be due and payable on the previous Contract modification settlement amount for the heat pumps, ceiling fan installation, and temperature setting changes. However, to date this interest has not been paid or otherwise addressed and is deemed denied.

FIRST CLAIM FOR RELIEF
(Breach of Contract – Failure to Adjust Utility Rates and Underpayments)

51. Plaintiff incorporates paragraphs 1 through 50 above as though fully set forth hereat.

52. The government's A rates and meter readings provided to Plaintiff were inaccurately calculated and reported to the Plaintiff during the course of the government's administration of the Contract.

53. When the government notified Plaintiff that the Contract payment calculation should be based on the local utility billings, it became apparent that there was confusion by the government as to the appropriate rate to apply to the energy savings Plaintiff achieved to determine Plaintiff's shared savings payment.

54. The government's errors, omissions, billing rate confusion, and failure to adjust utility rates have resulted in monthly underpayments of energy savings to Plaintiff. The government accordingly is liable to Plaintiff for the energy savings underpayments.

55. Plaintiff estimates it has been damaged by this breach of contract in an amount of more than $1,350,425.

SECOND CLAIM FOR RELIEF
(Failure to Pay Interest)

56. Plaintiff incorporates paragraphs 1 through 50 above as though fully set forth hereat.

57. By a Contract Modification P00109, dated September 22, 2000, the government provided a payment of the principal of its a negotiated agreement with Plaintiff for changes to heat pumps, ceiling fan installation, and temperature setting changes.

58. The government indicated that interest is due and payable on the settlement amount, but to date the interest has not been paid.

59. The interest is due and payable at the statutory rate on the principal amount from the date of the certified claim until paid by the government.

WHEREFORE, PLAINTIFF, CEPOLK LIMITED PARTNERSHIP prays that this Court grant judgment as follows:

1. On its First Claim for Relief, if the Court finds that the A rates should be used to calculate the proper monthly payments, then Plaintiff is entitled to damages in the amount of $1,443,246; if the Court finds that the A rates should be escalated by 4 percent annually, then Plaintiff is entitled to damages of $1,350,425, or such other amount as Plaintiff proves at trial.

2. On its Second Claim for Relief, if the Court finds that Plaintiff is entitled to interest payable on its claim dated July 15, 1999, Plaintiff is entitled to as damages the interest due on the principal of $990,912 from July 15, 1999, to December 31, 2002, in the amount of $230,304.24, with interest continuing to accrue until the paid by the government.

3. Interest on Plaintiff's claims otherwise found due at the rate fixed by statute, to the date of payment; and

4. Such other relief as this Court deems meet and just according to proof in this matter.

Dated: July 11, 2003

Respectfully submitted,

DORN C. McGRATH III

Greenberg Traurig, LLP
1750 Tysons Boulevard
Suite 1200
McLean, Virginia 22102
(703) 749-1317 (telephone)
(703) 749-1301 (facsimile)

Attorneys for Plaintiff

145608v6

DEPARTMENT OF THE ARMY
HEADQUARTERS, JOINT READINESS TRAINING CENTER AND FORT POLK
FORT POLK, LOUISIANA 71459

REPLY TO ATTENTION OF

July 18, 2002

DIRECTORATE OF CONTRACTING

SUBJECT: DACA87-94-C-0008

Mr. T. W. Mitchell
Co-Energy Group
1050 East Flamingo Road, Suite N136
Las Vegas, NV 89119

Dear Mr. Mitchell:

This letter is in response to a letter received from Mr. Power, dated July 16, 2002. The Government has tried to negotiate a settlement of your claim dated December 12, 2001 signed by Robert Freeman. The negotiation was not successful. Your claim is again addressing the "A" rate which we have discussed in the past and the Government thought we had come to an agreement to use this "A" as provided by the Government. If this is not satisfactory, the Government proposes to revert to what was originally bid on as stated in the contract. Paragraph 14.0, page C-22, states in part that the total dollar amount of the electric bill will be used to calculate the savings. The Government has been advised by the Army Audit Agency to use this as calculations for payment.

This office will look into the interest that you claim is due on the prior claim made by your company. This will be addressed in a separate letter.

The Government cannot justify that a mistake was made on Utility Rate Inflation. The rate used in Section M, was/is used for evaluation purposes only.

Therefore, the Government is denying all of the claim as stated in the letter dated December 12, 2001, with the above exception on interest.

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to

the agency board of contract appeals, you may solely at your election, proceed under the board's small claims procedure for claims of $50,000.00 or less or its accelerated procedure for claims of $100,000.00 or less. Instead of appealing to the agency board of contract appeals, you may bring action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Sincerely,

Peggy M. Tuck

Peggy M. Tuck
Contracting Officer